EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ RODRÍGUEZ RIVERA, acusado y apelante.

*Números:* CR-63-257, CR-63-258     *Resueltos:* 25 de noviembre de 1964

*Fernando Pérez Colón,* abogado designado por el Tribunal Supremo para ofrecer asistencia legal al acusado en apelación;

*J. B. Fernández Badillo, Procurador General,* e *Irene Curbelo, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Una vez más nos encontramos ante una situación que requiere equilibrar los intereses de la sociedad y del individuo. La comunidad tiene un interés genuino y legítimo en encausar y castigar al ofensor del orden social establecido, pero también tiene interés en proteger al individuo de un proceso en que su convicción se obtenga por métodos y tácticas que no son afines a las prescripciones constitucionales. La selección entre los valores envueltos se hace aún más difícil cuando contemplamos el cuadro vívido de una ascendente incidencia en la comisión de delitos, que justamente tiene que alarmar la conciencia ciudadana. No obstante, es preciso que prevalezca el criterio que responda más adecuadamente a las exigencias de nuestro sistema democrático que reconoce como cardinal postulado la dignidad del ser humano.

A las 12:15 A.M. del 26 de julio de 1961, el apelante José Rodríguez Rivera fue sometido a una detención y registro ilegal por un agente del orden público.[1] Como resultado del registro se le ocuparon ciertas prendas y otros objetos en una bolsa de papel que portaba. Fue conducido a la estación

---

[1] La versión sobre este incidente que mereció crédito al juez de instancia se desprende de los testimonios del policía Ángel Luis Medina Velázquez y el conductor Pablo Torres Santiago, quienes figuraban como testigos de cargo al dorso de las acusaciones que se le formularan al apelante. Rodríguez Rivera había abordado un taxímetro en Santurce y al llegar al Viejo San Juan solicitó del conductor que le condujera a la bóveda del Cementerio de la Capital, a lo cual éste se negó, originándose una discusión entre ambos. Al intentar el acusado dejar el vehículo, el conductor llamó a un agente que a la sazón se encontraba en la esquina de las Calles de la Fortaleza y la Tanca. Ante la querella del conductor sobre la negativa de Rodríguez a satisfacer el importe del pasaje, el policía requirió al acusado para que pagara la cuenta, a lo cual éste accedió. Luego de haberse realizado el pago el policía inquirió sobre el contenido de una bolsa de papel que el apelante portaba, quien contestó que contenía unos cigarrillos y unas medias. Procedió entonces a registrar la bolsa realizando el hallazgo de prendas y otros objetos. Sospechando de la legitimidad de su adquisición, detuvo a Rodríguez Rivera.

de la Policía en San Juan, y a las dos de la madrugada se le trasladó al Cuartel General(²) donde se le encomendó la investigación a un detective, a quien se le hizo entrega de los objetos ocupados. De allí se le llevó a la Sala de Investigaciones del Tribunal de Distrito. El Hon. J. Rivera Valdivia, con vista de la prueba presentada a su consideración, encontró causa probable y ordenó el arresto de Rodríguez Rivera por dos delitos de escalamiento en primer grado. Entre sus observaciones consignó de su puño y letra que "Dice el acusado bajo juramento que acepta todos y cada uno de los hechos presentados a consideración de este tribunal, alegando que él únicamente sin compañía de clase alguna efectuó 2 escalamientos. . . ."

El mismo día 26, sin que pueda precisarse la hora, el apelante prestó una declaración ante el Fiscal Hernán Longoria en la cual admite los escalamientos perpetrados y el hurto de los objetos que le fueron ocupados en virtud del registro a que fue sometido.(³) En la confesión hizo referencia expresa a las prendas; "una cadena, una sortija, un reloj de muñeca de hombre . . . unos encendedores, unos brazaletes . . . y prendas de fantasía. . . ."

El día señalado para la vista de las causas por los dos escalamientos, luego de renunciar al derecho a juicio por jurado, el acusado, por voz de su defensor y con su expreso asentimiento, acordó someter los casos por los expedientes de la investigación practicada por el Ministerio público, que contenían las declaraciones a que ya nos hemos referido y las de los respectivos perjudicados, estas últimas para cumplir

---

(²) El detective que condujo al apelante prestó una declaración jurada en la que consigna que se le entregó un *"shopping bag"* que contenía varias prendas y cosméticos. No interrogó al presunto acusado durante el trayecto.

(³) Al declarante se le advirtió de su derecho a no incriminarse y se le apercibió debidamente de que, de hacerlo, su testimonio podría utilizarse en su contra.

la exigencia de establecer el *corpus delicti*. (⁴) No obstante, la defensa solicitó la absolución del acusado fundándose en que habiéndosele arrestado ilegalmente todo el proceso estaba viciado de nulidad. El tribunal a quo falló este planteamiento en forma adversa a las pretensiones de la defensa. En síntesis, aunque sostuvo que el acusado había sido registrado y arrestado ilegalmente, consideró que la prueba ofrecida era suficiente para establecer el delito, y para ello hizo expresa referencia a la confesión del acusado que obraba en ambos expedientes. Para ello aplicó la norma enunciada en *Pueblo* v. *Fournier*, 77 D.P.R. 222, 252 (1954), al efecto de que el mero hecho de que un acusado haya sido detenido ilegalmente, por sí solo, no vicia de nulidad una confesión prestada voluntariamente, y recalcó que la situación en la jurisprudencia federal es distinta pues allí impera la regla McNabb. (⁵) Después de resuelto el planteamiento en la forma indicada, el abogado del acusado hizo las manifestaciones que copiamos a continuación:

". . . entendemos que al haber un arresto ilegal, un registro ilegal, ha habido una intervención ilegal con el acusado y que de ahí en adelante todo tipo de evidencia, evidencia material, física, *así como las manifestaciones que pudiera hacer el acusado fueron ilegalmente* recibidas y no pueden ser recibidas por tanto en evidencia y como consecuencia la declaración o confesión del acusado aunque ésta haya sido prestada libremente no puede tomarse en consideración para la resolución de ese caso, y para declararlo convicto con el cuerpo del delito más la confesión. Entendemos que el Tribunal no puede considerar la confesión del acusado y debe absolverlo."

Se señala como único error la admisión en evidencia de la confesión prestada por el apelante en las circunstancias ya

---

(⁴) Además en la declaración de uno de los perjudicados se dijo que "El 26 de junio de 1961 en horas de la tarde, y en presencia mía y ante el Juez Rivera Valdivia, un hombre que dijo llamarse José Rodríguez Rivera, admitió que él solamente y no acompañado de nadie admitía haber cometido el escalamiento en mi casa y en otra casa por allí."

(⁵) *McNabb* v. *United States,* 318 U.S. 332 (1943).

descritas así como la negativa a suprimir dicha evidencia. Aunque el apuntamiento de su faz se limita a la confesión, en el alegato presentado por el abogado se discute la cuestión con particular referencia a cualquier manifestación—llámese confesión o admisión—prestada por el acusado *después* de haberse efectuado el arresto y registro ilegales. Así lo consideraremos.

Repetidamente hemos resuelto que prueba obtenida como resultado de un registro o allanamiento ilegal no es admisible en evidencia y debe ser suprimida al solicitarse oportunamente, *Pueblo* v. *Capriles*, 58 D.P.R. 548, 560 (1941); *Pueblo* v. *Decós*, 62 D.P.R. 148, 155 (1943); *Pueblo* v. *Nieves*, 67 D.P.R. 305 (1947); *Pueblo* v. *Soto*, 71 D.P.R. 830 (1950); cf. *Pueblo* v. *Sánchez David*, 83 D.P.R. 409 (1961); *Pueblo* v. *Luciano Arroyo*, 83 D.P.R. 573 (1961); *Pueblo* v. *Vargas*, 80 D.P.R. 296 (1958); *Pueblo* v. *Albizu*, 77 D.P.R. 896 (1955),[6] y desde 1952 la Sec. 10 de la Carta de Derechos de nuestra Constitución así lo dispone expresamente. En todas las ocasiones en que hemos aplicado tal regla, que dicho sea de paso imperaba en Puerto Rico mucho antes de que el Tribunal Supremo federal la hiciera extensiva a los Estados en *Mapp* v. *Ohio*, 367 U.S. 643 (1961), la evidencia suprimida consistía de objetos tangibles, como material que se utiliza en el juego de la bolita, armas prohibidas y otras. No habíamos tenido ocasión de enfrentarnos al problema de la admisibilidad en evidencia de una confesión del acusado luego de haberse efectuado un registro ilegal durante el cual se ocuparon los "frutos" del delito cuya comisión se imputa.[7]

---

[6] Igual norma hemos seguido en los casos en que el registro, aunque legal, es irrazonable. *Pueblo* v. *Sosa Díaz*, 90 D.P.R. 622 (1964).

[7] Aunque lo que propiamente se discutía era el carácter voluntario de una confesión prestada después de una detención, el problema fue atisbado en *Pueblo* v. *Fournier*, 80 D.P.R. 390 (1958), en cuya opinión el Juez ponente Señor Saldaña expresó a la pág. 459, "La confesión de Fournier en San Antón constituyó la declaración voluntaria de una conciencia culpable. Fue 'voluntaria' en el único sentido que ese término

A los fines de delimitar propiamente la cuestión debemos aclarar que no se trata de si la confesión fue prestada voluntariamente en el sentido de que obedeció a presión y coacción física o psicológica, *Pueblo* v. *Martínez Figueroa*, 86 D.P.R. 413 (1962); *Pueblo* v. *Meléndez*, 80 D.P.R. 787 (1958); *Pueblo* v. *Fournier*, 77 D.P.R. 222 (1954). Para los fines de la discusión es un hecho establecido que el apelante no fue víctima de violencia, que sus manifestaciones fueron voluntarias y espontáneas. Todo cuanto resta es resolver si aun cuando éstas se produjeron dentro del clima indicado, su admisibilidad es frustrada por haber sido inducidas por los hallazgos de un registro ilegal.

Desde hace cincuenta años—*Weeks* v. *United States*, 232 U.S. 383 (1914)—tradicionalmente la garantía contra registros ilegales se había limitado a evidencia física. En enero de 1963, el Tribunal Supremo federal se expresó en *Wong Sun* v. *United States*, 371 U.S. 471, 485–486, en la siguiente forma:

"La regla de exclusión tradicionalmente ha impedido la admisión de objetos físicos o tangibles obtenidos bien durante o como resultado de un allanamiento ilegal. Se deduce de nuestra opinión en Silverman v. United States, 365 U.S. 505, 5 L.Ed. 2d 734, 81 S.Ct. 679, que la Enmienda Cuarta protege contra escuchar subrepticiamente (overhearing) manifestaciones orales así como contra la tradicional incautación de 'efectos y documentos'. En forma similar, testimonio sobre observaciones hechas durante un allanamiento ilegal ha sido excluido para darle efectividad a la política constitucional fundamental. McGinnis v. United States (CA 1 N.H.) 227 F.2d 598. Por consiguiente, evidencia oral que se deriva tan inmediatamente de un allanamiento o registro ilegal, como en el presente caso, no es menos el 'fruto' de la actuación oficial ilegal que los usuales frutos tangibles de un allanamiento no autorizado. Véase, Nueslein v. District of Colum-

---

puede tener cuando se aplica a una confesión hecha por una persona arrestada y sospechada *que se ve confrontada con prueba de culpabilidad que no puede negar ni explicar.*" (Énfasis nuestro.) Valga la pena aclarar que la prueba con que se confrontó a Fournier no había sido obtenida por medio de un registro ilegal.

bia, 73 App. DC 85, 115 F.2d 690. *Ni los principios en que se base la regla de exclusión justifican una distinción válida entre la evidencia física y la verbal.* Bien en términos de desalentar conducta contraria a la ley por parte de los agentes federales; Rea v. United States, 350 U.S. 214, 100 L.Ed. 233, 76 S.Ct. 292; o para clausurar el acceso a las cortes federales de cualquier evidencia obtenida por medios contrarios a la Constitución, Elkins v. United States, 364 U.S. 206, 4 L.Ed. 2d 1669, 80 S.Ct. 1437, es demasiado grande el riesgo que entraña no aplicar la regla de exclusión en el caso de evidencia oral para justificar la introducción de tal distinción."

A pesar de estas expresiones libres de toda ambigüedad respecto al alcance de la regla de exclusión de evidencia ilegalmente obtenida, en el siguiente párrafo de la opinión parece involucrarse la admisibilidad con el aspecto de su carácter voluntario al considerar las circunstancias en que se produjeron las manifestaciones, ([8]) debilitando así en cierta medida su efecto preciso.

■ Cualquier reserva que pudiera existir sobre el particular se disipó unos meses después al emitirse la opinión en *Fahy* v. *Connecticut*, 375 U.S. 85, 11 L.Ed.2d 191 (res. en 2

---

([8]) "El Gobierno sostiene que las manifestaciones hechas en su dormitorio por Toy a los agentes federales, aunque íntimamente ligadas al allanamiento que hemos considerado ilegal, son no obstante admisibles por ser el resultado de un 'acto interventor independiente de una voluntad libre'. Esta contención, sin embargo, ignora las circunstancias. Seis o siete agentes destrozaron la puerta de entrada y le siguieron los talones a Toy hasta el dormitorio donde descansaban la esposa e hijo de éste. Casi inmediatamente fue esposado y arrestado. Bajo tales circunstancias es irrazonable inferir que las contestaciones de Toy constituyeron el acto de una voluntad libre que purificó el pecado original del allanamiento ilegal" (a la pág. 486).

Esta posición hasta cierto punto ambivalente fue objeto de una sazonada crítica en una nota publicada en 31 Geo. Wash. L. Rev. 851 (1963), en la cual se apunta que el párrafo transcrito meramente demostraría que la confesión era inadmisible por haber sido lograda mediante coacción sicológica.

Para otros comentarios sobre la opinión emitida en *Wong Sun* v. *United States*, supra, en cuanto a este punto específico de la ampliación de la regla de exclusión, véanse, notas en 77 Harv. L. Rev. 117 (1963) y 51 Calif. L. Rev. 637 (1963), especialmente el escolio 9.

de diciembre de 1963), en el cual se sostiene que son inadmisibles las confesiones o admisiones "que han sido inducidas al confrontarse [al acusado] con evidencia ilegalmente obtenida" (a la pág. 175).

■ La eficacia de esta norma es tan obvia—por ser una consecuencia lógica de la garantía contra registros ilegales que garantiza nuestra Constitución—que no vacilamos en adoptarla para esta jurisdicción. Ahora bien, esto no significa que toda confesión hecha después de un registro ilegal sea inadmisible. Corresponde al acusado establecer—al igual que en cualquier otro incidente sobre supresión de evidencia que se alega ha sido ilegalmente obtenida—que la misma fue inducida por el resultado del registro ilegal, por la confrontación con sus "frutos".(⁹) Tampoco ello obsta para que el Pueblo haga uso de la prueba si tiene conocimiento de los hechos por una fuente independiente, pues como se dijo en *Silverthorne Lumber Co.* v. *United States*, 251 U.S. 385, 392 (1920), los hechos descubiertos en esa forma no se convierten en "sagrados e inaccesibles".

Retornando ahora a los hechos específicos del presente caso, la dificultad con que nos confrontamos es que fue sometido al tribunal de instancia por el expediente de fiscalía, sin que se produjera prueba sobre las circunstancias en que se obtuvo la confesión. Ello es explicable si consideramos que para esa fecha nuestra regla de exclusión sólo cubría los objetos tangibles ocupados y aún no se habían resuelto *Wong Sun* v. *United States*, supra y *Fahy* v. *Connecticut*, supra. Las constancias de los autos a que hemos hecho referencia en la relación que antecede en esta opinión dejan en nuestro ánimo una fuerte impresión de que no es remota la posibilidad de que la confesión y otras admisiones hechas por el apelante cristalizaran ante la confrontación con las prendas y

---

(⁹) Un interesante problema surge cuando la evidencia ocupada como resultado de un registro ilegal incrimina a una tercera persona. Véanse, *People* v. *Ditson*, 369 P.2d 714 (1962) y nota en 50 Calif. L. Rev. 723 (1962).

los otros artículos ocupados. *Ante esta situación la justicia demanda que dejemos sin efecto las convicciones y devolvamos los casos para que se reciba prueba sobre este extremo. Así se decretará.*

El Juez Presidente Señor Negrón Fernández concurre en el resultado.