Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE CAGUAS
PANEL ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>V.<br><br>MARCOS NÚÑEZ GONZÁLEZ<br><br>Apelante | KLAN202100949 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.:<br>E VI2019G0030<br>E OP2019G0033<br>E FJ2019G0012<br>E LA2019G0175<br>E LA2019G0176<br>E LA2019G0177<br>E LA2019G0178<br>E LA2019G0179<br><br>Por:<br>Art. 93-A CP (2012)<br>Art. 249-A CP (2012)<br>Art. 280 CP (2012)<br>Art. 5.04 LA (2)<br>Art. 5.15 LA (2)<br>Art. 5.20 LA (2) |

Panel integrado por su presidente el Juez Rivera Torres, la Jueza Santiago Calderón y la Jueza Diaz Rivera[1].

Díaz Rivera, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de febrero de 2023.

Comparece el apelante, Marcos Núñez González, y solicita nuestra intervención para que revoquemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas, el 25 de octubre de 2021. Mediante dicho dictamen, se declaró al apelante culpable y convicto por infringir los Artículos 93, 249a y 280 del Código Penal de Puerto Rico del 2012 (Código Penal), 33 LPRA secs. 5142, 5339 y 5373 y los Artículos 5.04 (2 cargos), 5.15 (2 cargos) y 5.20 de la derogada Ley Núm. 168-2020 (Ley de Armas), 25 LPRA secs. 458c, 458n y 458s.

---

[1] Mediante Orden Administrativa OATA-2022-140 se designa a la Hon. Karilyn M. Diaz Rivera en sustitución de la Hon. Gloria L. Lebrón Nieves.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada.

**I.**

Surge del expediente de la apelación ante *nos*, que por hechos ocurridos el 29 de septiembre de 2019, el Ministerio Público presentó ocho (8) acusaciones en contra del apelante, por violaciones los Artículos 93, 249a y 280 del Código Penal y los Artículos 5.04 (2 cargos), 5.15 (2 cargos) y 5.20 de la derogada Ley de Armas.

En síntesis, se acusó al apelante de que allá para el 29 de septiembre de 2019, en concierto y común acuerdo con John Marcos Núñez Rivera y Yadier Alfredo Díaz, en el Municipio de Aguas Buenas, ilegal, voluntaria, criminal, a propósito, e intencionalmente, le dio muerte a Pedro José Cotto Rivera, disparándole con dos armas de fuego desde un vehículo de motor. Se le acusó, además, de apropiarse de un arma de fuego tipo rifle, perteneciente a Pedro Cotto Rivera y de haber ocultado y procurado la desaparición de las armas de fuego utilizadas en el asesinato.

Luego del proceso de *Desinsaculación de Jurado*, el desfile de prueba del Juicio en su Fondo se llevó a cabo los días 17, 19 y 27 de agosto, los días 16, 17, 21, 24 y 27 de septiembre y el 1 de octubre de 2021. La prueba documental de cargo presentada para sostener los cargos imputados consistió en la siguiente: (1) Informe de Hallazgos de Escena (*Exhibit 1*); (2) CD Fotos de Escena (*Exhibit 2)*; (3) CD Videos de Escena (*Exhibit* 3), (4) Informe Médico Forense con Toxicología (*Exhíbit* 4)*, (5) Sobre sellado con casquillos, bala, casquillos disparados, fragmento de proyectil recuperado del cuerpo (Exhíbit 5a-5d), (6) Certificado de Armas de Fuego (*Exhíbit* 6), (7) Solicitud y Orden de Registro y Allanamiento de Vehículo (*Exhíbit 7)*, (8) Solicitud y Orden de Registro y Allanamiento de Residencia (*Exhíbit 8)*, (9) PPR-128 (*Exhíbit 9)*, (10) Inventario Propiedad

Ocupada *(Exhíbit 10)*, (11) Certificación Verificación de Información (*Exhíbit 11 y 12*), (12) Fotografías de Allanamiento (*Exhíbit 13a-13g*), (13) Fotos de Escena (*Exhíbit 14a-14g*), (14) Copia Libro de Confidencias (*Exhíbit 15*), (15) Fotos de Residencia (*Exhíbit 16a-16h)*, (16) Croquis *(Exhíbit 17*), (17) Advertencias de Ley a José Rivera López (*Exhíbit 18a-18b*), (18) Solicitud sobre Investigación Confidencial (*Exhíbit 19*), (19) Acta de Rueda de Confrontación (*Exhíbit 20*) y (20) Advertencias de Ley a Yadier Díaz y Marcos Núñez (*Exhíbit 21 y 22).* También se presentó la siguiente prueba documental estipulada por las partes: (1) Solicitud de Servicios Forenses AF-19-1160 (*Exhíbit 1 y 2*), (2) Solicitud de Análisis PAT3833-19, (*Exhíbit 3).* Finalmente, la prueba documental presentada por la defensa consistió en (1) Forma PPR 615.7.

Además, el Ministerio Público presentó el testimonio bajo juramento de las siguientes personas: (1) Agte. Tomás Velázquez Maldonado, (2) Sra. Angie Hernáiz Rivera, (3) Sr. Raymond Rosado Rentas, (4) Agte. José R. Gracia Vega, (5) Agte. Antonio Berríos Rosado, (6) Sra. Edmarie Ortiz Rivera, (7) Agte. Alexander Meléndez Rivera, (8) Agte. Miguel Morales Cotto, (9) Agte. Edwin Santiago Martínez, (10) Sra. Josefina Rivera Rosario, (11) Agte. Jesús Manuel Torres Ramírez, (12) Sr. Wilfredo Ayala Rosa, (13) Sr. Steven González, (14) Sr. Joekeniel Rodríguez Rivera, (15) Sra. Jacqueline Berríos Rivera, (16) Sr. Amissaday Silva Aponte, (17) Dra. Eda Rodríguez Morales, (18) Sr. José Rivera López, (19) Sr. Yadier Alfredo Díaz Rosa, (20) Sra. Zuleyka Rosa Sánchez y (21) Agte. Anthony Egea Guardarrama.

Así las cosas, luego de escuchado el testimonio de los testigos presentados por el Ministerio Público y evaluada la totalidad de la prueba que tuvo ante sí, el 1 de octubre de 2021, el Jurado emitió un veredicto de culpabilidad en todos los cargos, según imputados. En atención a ello, el 25 de octubre de 2021, el Tribunal de Primera

Instancia emitió *Sentencia* en contra del apelante, imponiéndole la siguiente pena:

(1) En el cargo por Art. 93 del Código Penal, noventa y nueve (99) años de cárcel;

(2) En el cargo por Art. 249a del Código Penal, veinte (20) años de cárcel;

(3) En el cargo por Art. 280 del Código Penal, tres (3) años de cárcel;

(4) En los dos cargos por Art. 5.04 de la Ley de Armas, veinte (20) años de cárcel en cada cargo[2];

(5) En los dos cargos por Art. 5.15 de la Ley de Armas, diez (10) años de cárcel en cada cargo[3]; y

(6) En el cargo por Art. 5.20 de la Ley de Armas, diez (10) años de cárcel.

Las penas impuestas por las violaciones al Código Penal, serían concurrentes entre sí, pero consecutivas con las penas impuestas por las violaciones a la Ley de Armas. Estas, a su vez, serían consecutivas entre sí, para un total de ciento sesenta y nueve (169) años de cárcel.

Inconforme con la *Sentencia*, el 22 de noviembre de 2021, el apelante acudió a este Foro y señaló la comisión de los siguientes errores:

> **PRIMER ERROR:**
> **Erró el Honorable Tribunal al declarar a Marcos Núñez González culpable y convicto por los delitos imputados ante la prueba contradictoria, insuficiente en derecho y carente de crédito, que no derrotó la presunción de inocencia ni estableció los elementos del delito más allá de duda razonable.**
>
> **SEGUNDO ERROR:**
> **Erró el Honorable Tribunal al aceptar la imputación de concierto y común acuerdo, sin**

---

[2] El TPI impuso la pena fija de 10 años en cada cargo, más la pena duplicada de conformidad con el Art. 7.03 de la Ley de Armas.

[3] El TPI impuso la pena fija de 5 años en cada cargo, más la pena duplicada de conformidad con el Art. 7.03 de la Ley de Armas

realizar un análisis integral de la prueba desfilada.

**TERCER ERROR:**
Erró el Honorable Tribunal al no considerar el arresto del señor Marcos Núñez González como una detención ilegal por tres días realizada mediante engaño a través de una "invitación al cuartel" y transportarlo en vehículo oficial de la policía.

**CUARTO ERROR:**
Erró el Honorable Tribunal al admitir en evidencia el testimonio del Agente Jesús Torres Ramírez sobre declaraciones del Sr. José López sin que se cumpliera con las exigencias de prueba de referencia. El señor José Rivera López no había declarado en ningún procedimiento anterior, por lo cual la defensa no había tenido oportunidad de contrainterrogar al declarante en el momento que ofreció el testimonio del agente.

**QUINTO ERROR:**
Erró el Honorable Tribunal al no permitir que el testigo de cargo Yadier Diaz Rosa fuera contrainterrogado en relación con su estado de sumariado.

**SEXTO ERROR:**
Erró el Honorable Tribunal al omitir la instrucción al jurado sobre el testimonio de coautor y cooperador bajo la Regla 156 de las Reglas de Procedimiento Criminal de 1963, según enmendadas, que fue establecida en el proyecto de instrucciones trabajadas entre las partes y el Honorable Juez.

**SÉPTIMO ERROR:**
Erró el Honorable Tribunal al otorgar credibilidad a la confidencia recibida por el Agente Antonio Berrios Rosado, la cual debió ser evaluada con desconfianza al considerar las circunstancias bajo la cual fue recibida y su contenido.

**OCTAVO ERROR:**
Erró el Honorable Tribunal al no otorgar credibilidad a los hallazgos de la prueba pericial presentada por la examinadora de armas, la Sra. Jaqueline Berrios Rivera, sobre que todos los casquillos de 99 milímetros encontrados en la escena correspondían a una solo arma de fuego. Tal prueba científica contradice las declaraciones del testigo principal, Sr. Yadier Diaz Rosa.

**NOVENO ERROR:**
Erró el Honorable Tribunal al otorgar credibilidad al testigo principal, Sr. Yadier Diaz Rosa, al que debió evaluar con

**desconfianza y cautela, quien brindó un testimonio lleno de contradicciones e inconsistencias sobre hechos esenciales y que mintió descaradamente tanto en las declaraciones juradas a los agentes del orden público como en sus declaraciones durante el juicio, atendiendo los hallazgos de la evidencia física en la escena y la prueba desfilada.**

**DÉCIMO ERROR:**
**Erró el Honorable Tribunal al otorgar credibilidad a las declaraciones del Sr. Yadier Diaz Rosa y el Sr. Steven González en relación con el disparo que se realizó desde el vehículo frente al negocio de Picadera's Sport Bar. Tal declaración desmiente y contradice la evidencia física ocupada en la escena por la investigadora forense, Sra. Angie Hernáiz Rivera, y en el informe de hallazgos de escena. Esta evidencia consistía en un casquillo de bala localizado frente a la parada de guagua en el kilómetro 21.2.**

**UNDÉCIMO ERROR:**
**Erró el Honorable Tribunal al otorgar credibilidad al Agente Investigador Anthony Egea Guardarrama, a quien debió de evaluar con cautela por brindar un testimonio contradictorio e inconsistente[s] con las declaraciones anteriores durante la vista de determinación de causa para arresto.**

**DUODÉCIMO ERROR:**
**Erró el Honorable Tribunal al otorgar credibilidad a la testigo, Sra. Edmarie Ortiz Rivera, a quien debió evaluar con desconfianza y cautela por brindar un testimonio contradictorio e inconsistente sobre los hechos que pueden comprobarse con los siguientes testimonios: la Sra. Josefina Rivera Rosario, Sr. Steven González, Sr. Joekeniel Rodríguez, Sr. Amisaday Silva Aponte, Agente Antonio Berrios Rosado y Agente Anthony Egea Guardarrama.**

**II.**

**A. Presunción de Inocencia**

El Art. II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico, Art. II Const. ELA, LPRA, Tomo 1, garantiza a todo acusado de delito, el derecho fundamental a la presunción de inocencia durante todo el proceso criminal. Ese derecho, constituye uno de los imperativos del debido proceso de ley, según lo ha reconocido nuestro más alto Foro en múltiples ocasiones. *Pueblo v.*

*Rodríguez Pagán*, 182 DPR 239 (2011). Además, y de manera más específica, la Regla 110 (F) de Procedimiento Criminal, 34 LPRA Ap. II, dispone que, en los casos criminales, la culpabilidad de la persona debe ser establecida más allá de duda razonable. Es el Ministerio Público, quien tiene la obligación de presentar evidencia para cumplir con la carga probatoria de establecer la culpabilidad del acusado. Dicho de otra forma, el Ministerio Público tiene que probar - más allá de duda razonable - todos los elementos del delito, la intención o negligencia criminal en su comisión y la conexión de la persona acusada con los hechos. *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000).

No obstante, lo anterior, es necesario señalar que la *duda razonable* no es una duda especulativa ni se extiende a cualquier duda posible. El Tribunal Supremo de Puerto Rico ha definido como *duda razonable,* aquella duda fundada que surge como el raciocinio de todos los elementos de juicio envueltos en un caso. Nuestro más alto Foro ha expresado además que, para poder rebatir la presunción de inocencia, el Ministerio Público deberá probar cada uno de los elementos del delito imputado y producir certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. *Pueblo v. Bigio Pastrana*, 116 DPR 748 (1985), *Pueblo v. Cruz Granados*, 116 DPR 3 (1984); *Pueblo v. Irizarry*, 156 DPR 780 (2002).

Ahora bien, en nuestro ordenamiento jurídico, es norma reiterada que, al enfrentarnos a la tarea de revisar la suficiencia de la prueba en convicciones criminales, nuestra función revisora está enmarcada dentro de unas consideraciones que nos limitan. Como sabemos, al momento de revisar las determinaciones que realizan los juzgadores de primera instancia, ya sea Juez o Jurado, debemos otorgarle una gran deferencia en cuanto a la prueba testifical presentada ante ellos. La regla general es que el tribunal revisor no

debe intervenir con la adjudicación de credibilidad de los testigos ni sustituir las determinaciones de hechos basadas en las apreciaciones de esa prueba. *Pueblo v. Toro Martínez,* 200 DPR 834 (2018). Además, el veredicto del jurado, como la sentencia del juez, es un acto investido con la alta dignidad de la magistratura en la función juzgadora de la conducta de los hombres, y no es para echarse a un lado con liviandad e indiferencia. *Pueblo v. Figueroa Rosa,* 112 DPR 154 (1992). La norma expuesta, descansa en el hecho de que los foros de instancia están en mejor posición para evaluar la prueba desfilada, pues tienen la oportunidad de observar y escuchar a los testigos y, por ello, su apreciación merece gran respeto y deferencia. *Pueblo v. Acevedo Estrada,* supra*; Pueblo v. Rosario Reyes*, 138 DPR 591 (1995).

Claro está, a pesar de que la determinación de culpabilidad hecha por el juzgador de los hechos merece gran deferencia, ésta podrá ser revocada en apelación si se demuestra que hubo pasión, prejuicio o parcialidad y/o si se incurre en error manifiesto debido a que la prueba no concuerda con la realidad fáctica o es increíble o imposible. *Pueblo v. Maisonave*, 129 DPR 49 (1991); *Pueblo v. Acevedo Estrada*, supra, pág. 99. Así, pues, a menos que existan los elementos mencionados o que la apreciación de la prueba se distancie de la realidad fáctica o ésta sea inherentemente imposible o increíble, el tribunal apelativo deberá abstenerse de intervenir con la apreciación de la prueba hecha por el juzgador de los hechos. *Pueblo v. Maisonave Rodríguez,* supra.

En el caso *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013), nuestro Tribunal Supremo tuvo la oportunidad de definir lo que es *pasión, prejuicio o parcialidad* y *error manifiesto*. A esos efectos, nuestro más alto Foro expresó que se incurre en *pasión, prejuicio o parcialidad* cuando se actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o

rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna." Por su parte, las determinaciones del foro revisado son un *error manifiesto* si de un análisis de la totalidad de la evidencia, el foro revisor queda convencido de que se cometió un error porque las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida debido a que se distancian de la realidad fáctica o es inherentemente imposible o increíble. *Dávila Nieves v. Meléndez Marín*, supra, pág. 772.

Finalmente, en cuanto a la cantidad de prueba requerida para sostener una convicción, es necesario acudir a la Regla 110 de Evidencia, 32 LPRA Ap. VI. Conforme al inciso (D) de dicho precepto reglamentario, "[l]a evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley." Por ello, el testimonio de un sólo testigo - de ser creído por el juzgador de los hechos - es suficiente para sustentar una convicción; toda vez que no se trata de un análisis de cantidad.

### B. Detenciones Irrazonables y Regla 22 de Procedimiento Criminal

La Constitución de Puerto Rico establece que ninguna persona podrá ser privada de su libertad o propiedad sin un debido proceso de ley. Const. E.L.A., LPRA, Tomo I, ed. 2008, pág. 296. Esta disposición es la "matriz de la garantía de los derechos individuales ante la intervención injustificada del Estado con el ciudadano". *Pueblo v. Román Mártir*, 169 DPR 809, 821-22 (2007). Como colorario del derecho a un debido proceso de ley, la Regla 22(a) de Procedimiento Criminal, 34 LPRA, Ap. II, exige que una vez se realice un arresto, la persona arrestada deberá ser llevada ante un

magistrado sin dilación innecesaria. *Pueblo v. Pérez Rivera,* 186 DPR 845, 860 (2012).

A esos efectos, la Regla 22(a) de Procedimiento Criminal, supra, establece que "[c]ualquier persona que hiciere un arresto sin orden de arresto deberá llevar a la persona arrestada sin demora innecesaria ante el magistrado disponible más cercano, y si la persona que hiciere el arresto sin orden de arresto fuere una persona particular, podrá entregar a la persona arrestada a cualquier funcionario del orden público, quien a su vez deberá llevar a la persona arrestada sin demora innecesaria ante un magistrado, según se dispone en esta Regla. Cuando se arrestare a una persona sin que se hubiere expedido orden de arresto y se le llevare ante un magistrado, se seguirá el procedimiento que disponen las Reglas 6 y 7, según corresponda".

El Tribunal Supremo de Puerto Rico, tuvo la oportunidad de interpretar lo que constituye una "demora innecesaria" en *Pueblo v. Aponte Nolasco*, 167 DPR 578 (2006). En ese caso, nuestro más alto foro resolvió que, en ausencia de circunstancias extraordinarias, una persona arrestada debe ser llevada ante un magistrado para la correspondiente determinación de causa probable para arresto dentro de un periodo de treinta y seis (36) horas. Añadió que cualquier demora en exceso se presume injustificada o irrazonable. *Pueblo v. Aponte Nolasco*, Id. pág. 586.

Es necesario resaltar, que el término de treinta y seis (36) horas es un término directivo, con la consecuencia de que se activa una presunción, rebatible, de que cualquier detención en exceso es irrazonable. Claro está, en última instancia, la razonabilidad de una detención deberá dilucidarse según las circunstancias particulares de cada caso.

De otra parte, la consecuencia de una detención ilegal o irrazonable en una acción penal la encontramos en la Sección 10 de

la Constitución del Estado Libre Asociado de Puerto Rico. La propia sección 10 establece que la "[e]videncia obtenida en violación a esta sección será inadmisible en los tribunales." Cónsono con lo anterior, una admisión de un sospechoso de delito o evidencia obtenida producto de una detención ilegal podría ser suprimible como fruto del árbol ponzoñoso.

### C. Frutos del Árbol Ponzoñoso

La regla de exclusión conocida como la doctrina del "fruto del árbol ponzoñoso" fue establecida por el Tribunal Supremo Federal en *Silverthorne Lumber Co. v. U.S.*, 251 US 385 (1920), en el contexto de excluir evidencia derivada de una violación a la Cuarta Enmienda de la Constitución de Estados Unidos. *Pueblo v. Fernández Rodríguez,* 188 DPR 165, 175 (2013). Mientras, en esta doctrina fue adoptada en nuestro ordenamiento jurídico por vía de jurisprudencia en casos como *Pueblo v. Cedeño Laclaustra,* 157 DPR 743 (2002), *Pueblo v. Calderón Díaz,* 156 DPR 549 (2002), *Pueblo v. Rey Marrero,* 109 DPR 739 (1980) y *Pueblo v. Rodríguez Rivera,* 91 DPR 456 (1964), entre otros.

La doctrina de "frutos de árbol ponzoñoso" establece que, además de la evidencia obtenida directamente de una violación a la Sección 10 de nuestra Constitución, la evidencia derivada de esa violación tampoco será admisible en los tribunales. En otras palabras, la evidencia admitida por los tribunales debe estar desvinculada de la violación inicial a la protección constitucional.

Es importante tener en cuenta, que el fruto del árbol ponzoñoso puede ser de diversa naturaleza. La ilegalidad inicial puede generar, por ejemplo, una confesión, una identificación del sospechoso, el testimonio de un testigo, evidencia física, etc. Véase Ernesto L. Chiesa Aponte, *"Procedimiento Criminal y La Constitución: Etapa Investigativa",* Ediciones Situm 2017, pág. 283. En ese sentido, la aplicación de la figura no siempre es igual, sino que va a

depender de la evidencia que se obtenga y de las particulares de cada caso.

A su vez, es preciso señalar que la exclusión de la evidencia fruto del árbol ponzoñoso no es aplicable cuando: 1) la evidencia se obtuvo de una fuente independiente, desvinculada de la ilegalidad inicial, 2) el vínculo entre la evidencia objetada y la ilegalidad está muy atenuado o diluido o 3) cuando la evidencia hubiera sido descubierta inevitablemente. *Id.* Pág. 285.

### D. Prueba de Referencia

La Regla 801(c) de Evidencia, 32 LPRA Ap. VI, R.801, define prueba de referencia como una declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado. Por su parte, la Regla 804 de Evidencia, 32 LPRA Ap. VI, R.804, dispone que "salvo que de otra manera se disponga por ley, no será admisible prueba de referencia, sino de conformidad con lo dispuesto en este capítulo. Esta regla se denominará Regla de prueba de referencia."

Cuando se pretende utilizar prueba de referencia contra un acusado, se activa la protección constitucional del derecho a confrontación consagrado tanto en la Enmienda Sexta de la Constitución de los Estados Unidos, como en la Sección 11 de nuestra Constitución. Dicha protección constitucional no sólo garantiza el derecho al careo, sino que también implica que cierta prueba de referencia, si es testimonial, también será excluida a pesar de caer bajo alguna de las excepciones a la regla de exclusión codificadas en las Reglas de Evidencia. *Crawford v. Washington*, 541 US 36 (2004), *Pueblo v. Guerrido López*, 179 DPR 950 (2010).

### E. Admisibilidad y Pertinencia en la Impugnación de Testigos

La Regla 401 de Evidencia, 32 LPRA Ap. VI, R.401, define lo que es evidencia pertinente. "Evidencia pertinente, es aquella que

tiende a hacer la existencia de un hecho, que tiene consecuencias para la adjudicación de la acción, más probable o menos probable de lo que sería sin tal evidencia. Esto incluye la evidencia que sirva para impugnar o sostener la credibilidad de una persona testigo o declarante". Además, nos dice la Regla 402 de Evidencia, 32 LPRA Ap. VI, R. 402 que "[l]a evidencia pertinente es admisible excepto cuando se disponga lo contrario por imperativo constitucional, por disposición de ley o por estas Reglas. La evidencia no pertinente es inadmisible." Dicho de otro modo, la pertinencia es un requisito necesario, pero no suficiente para la admisibilidad de prueba.

### F. Instrucciones al Jurado sobre Testimonios de Coautor

Es norma reiterada en nuestro ordenamiento jurídico que las instrucciones al jurado constituyen el mecanismo procesal mediante el cual los miembros del Jurado toman conocimiento del derecho aplicable al caso. *Pueblo v. Rodríguez Vicente*, 173 DPR 292, 297 (2008), citando a E.L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Vol. II, Editorial Forum, Colombia, 1992, p. 330. En vista de que el jurado, de ordinario, está compuesto de personas desconocedoras de las normas jurídicas vigentes en nuestro ordenamiento jurídico, el magistrado que preside el proceso tiene el deber ineludible de instruir a sus miembros sobre el derecho aplicable al caso y de velar que las instrucciones impartidas sean correctas, precisas y lógicas. Ello asegura, además, que el desenlace del proceso adversativo, cualquiera que fuere, esté guiado por el derecho y los hechos. *Pueblo v. Rodríguez Vicente*, 173 DPR 292, 297-298 (2008); *Pueblo v. Acevedo Estrada*, 150 DPR 84, 95 (2000); *Pueblo v. González Colón*, 110 DPR 812, 815 (1981).

En términos generales, el acusado tiene el derecho a que se informe al jurado de todos los aspectos del Derecho que, según cualquier teoría razonable, pudieran ser pertinentes en las deliberaciones, aunque la prueba de la defensa sea débil,

inconsistente o de dudosa credibilidad. *Pueblo v. Negrón Ayala, supra,* pág.414. Entre los distintos aspectos que deben incluirse en las instrucciones al jurado se encuentran los elementos del delito imputado y, si la prueba así lo justifica, los elementos de los delitos inferiores al imputado o que estén comprendidos dentro de éste. Además, el tribunal deberá hacer hincapié en que el Ministerio Público tiene la obligación de establecer todos los elementos del delito más allá de duda razonable. *Pueblo v. Rosario*, 160 DPR 592, 604-605 (2003).

A esos efectos, la Regla 137 de Procedimiento Criminal, 34 LPRA Ap. II, R. 137, provee para que, antes de que el jurado se retire a deliberar, el Ministerio Público y la defensa soliciten instrucciones especiales al foro primario. Esta regla establece, además, las consecuencias de no efectuar una oportuna solicitud. Si la defensa no está de acuerdo con las instrucciones que el foro de instancia se propone impartir, debe solicitar instrucciones particulares. De lo contrario, las instrucciones se limitarán a las que el juez, *motu proprio*, establezca y no podrá plantearse como un error.

Ante una apelación impugnando las instrucciones impartidas a un jurado, hay que considerar las instrucciones en conjunto para determinar su corrección o incorrección. *Pueblo* v. *Dómenech Meléndez*, 98 DPR 64, 68 (1969).

No obstante, si el tribunal comete un error al impartir las instrucciones al jurado, ello no acarrea la revocación automática de una sentencia, si el error no es perjudicial o no se demuestra que violara derechos fundamentales o sustanciales del acusado. Véase: *Pueblo v. Torres Rodríguez, 119 DPR 730, 740 (1987).*

Por su parte, la Regla 156 de Procedimiento Criminal, 34 LPRA Ap. II, R. 156, establece que "[e]l testimonio de un coautor o del cooperador será examinado con desconfianza y se le dará el peso que estime el juez o el jurado luego de examinarlo con cautela a la

luz de toda la evidencia presentada en el caso. En los casos celebrados por jurado se le ofrecerán al jurado instrucciones a esos efectos".

**III.**

Por estar íntimamente relacionados entre sí, discutiremos el primer, segundo, séptimo, octavo, noveno, décimo, undécimo y duodécimo señalamiento de error de manera conjunta. En el presente caso, mediante dichos señalamientos de error, el apelante aduce, básicamente, que el foro primario erró al declararle culpable, cuando la prueba de cargo no estableció su culpabilidad más allá de duda razonable, en violación al derecho a la presunción de inocencia y al debido proceso de ley. Como parte de su discusión de esos señalamientos de errores, el apelante argumentó que la prueba presentada por el Ministerio Público durante el *Juicio en su Fondo,* fue insuficiente, estuvo plagada de contradicciones, el Tribunal no debió otorgarle credibilidad a los testigos de cargo y erró en su apreciación. No le asiste la razón.

Con relación a la alegada falta de credibilidad de los testigos de cargo y la suficiencia de la prueba desfilada, el Jurado estuvo en mejor posición para evaluar la prueba desfilada que este Tribunal apelativo intermedio. Fue el Jurado, quien tuvo la oportunidad de observar y escuchar a los testigos de cargo. Es por ello que, de conformidad con nuestro ordenamiento jurídico, ante la ausencia en el expediente de algún indicio de pasión, perjuicio o parcialidad, este Foro Revisor le otorga completa deferencia a la apreciación de la prueba - particularmente la adjudicación de credibilidad - que hizo el Jurado sobre los testigos. No se cometieron los errores señalados.

En relación con el tercer señalamiento de error, el apelante arguye que erró el Tribunal al no considerar que el arresto del apelante, en exceso de treinta y seis (36) horas, fue una detención ilegal. Sostiene, que su detención se extendió por setenta y dos (72)

horas, tanto así que los agentes tuvieron que darle comida y sus medicamentos. Añade, que, conforme a *Pueblo v. Aponte Nolasco*, supra, la detención se presume irrazonable y que los agentes que estuvieron entrevistando al apelante no ofrecieron una justa causa para extender la detención por tanto tiempo. Concluye diciendo, que durante el periodo que el apelante estuvo detenido, los agentes estuvieron tomando declaraciones juradas y entrevistando testigos, mientras el apelante se vio privado de buscar una adecuada representación legal, lo que facilitó la investigación del caso.  No le asiste la razón.

En primer lugar, debemos señalar que, a pesar de su señalamiento de error, el apelante no solicitó ningún remedio como parte de este. Tras una evaluación minuciosa del expediente, pudimos notar que tampoco solicitó ante el Tribunal de Primera Instancia la supresión de ninguna evidencia producto de la detención en exceso a las treinta y seis (36) horas.  No obstante, las consecuencias de una detención ilegal ya las discutimos. En segundo lugar, el apelante se limita a alegar que la detención excedió las treinta y seis (36) horas, más no sustenta dicha alegación con la prueba desfilada y que surge del expediente ante nos.

Sin embargo, de la Transcripción de la Prueba Oral (TPO) que obra en el expediente, surge que el Agte. Egea Guardarrama declaró que el apelante fue arrestado alrededor de las 10:30pm del 1 de octubre de 2019[4].  Ante ello, las treinta y seis (36) horas se cumplían a las 10:30am del 3 de octubre de 2019. Pudimos constatar en el expediente de autos que las denuncias del presente caso fueron presentadas ante el Tribunal a las 2:09pm y juramentadas a las 2:11pm del 3 de octubre de 2019. Sin duda, matemáticamente hablando, el Ministerio Público se excedió de las

---

[4] Véase TPO del 27 de septiembre de 2021, pág. 150 y pág. 156.

horas en las que se presume razonable tener a una persona detenida sin una determinación de causa para arresto por parte de un magistrado. Sin embargo, las consecuencias de dicha dilación no tienen el alcance que pretende darle el apelante.

Como mencionáramos anteriormente, la consecuencia de una detención irrazonable es que la evidencia directamente obtenida y la evidencia derivada de la misma, no serán admisibles en los tribunales. Sin embargo, también discutimos que dicha regla de exclusión tiene unas excepciones entre las que se encuentra el vínculo atenuado. Esto es, que la evidencia obtenida se obtuvo de una fuente independiente, desvinculada de la ilegalidad o que el vínculo es muy atenuado.

En el presente caso, aunque no lo dice, parece ser que el apelante pretende que extendamos la regla de exclusión a toda la evidencia obtenida como parte de la investigación, so pretexto de que le fue más fácil al Estado llevar a cabo la investigación mientras el apelante se encontraba detenido en exceso de treinta y seis (36) horas y sin poder intervenir en la investigación en su contra. Ciertamente, el apelante no logró establecer una conexión directa ni derivada entre la detención del apelante y la evidencia obtenida y presentada en el Juicio en su Fondo. Ello es así, debido a que como parte de la investigación no se obtuvo confesión o manifestación alguna del apelante, tampoco se ocupó evidencia física sobre su persona. Además, las declaraciones juradas de los testigos de cargo no fueron producto de la detención del apelante. Concluimos, por lo tanto, que no se cometió el tercer señalamiento de error.

De otra parte, en su cuarto señalamiento de error, aduce el apelante que el Tribunal erró al admitir en evidencia el testimonio del Agte. Jesús Torres Ramírez, sobre las declaraciones del Sr. José Rivera López, sin que se cumplieran las exigencias de prueba de referencia. Añadió, que como dicho testigo no había declarado en

las etapas anteriores al juicio, la defensa no había tenido la oportunidad de contrainterrogarlo en el momento en que prestó testimonio al agente.

Según discutido, la prueba de referencia consiste en una declaración, que no sea la que la persona declarante hace en el juicio o vista en cuestión y que se trae para probar la verdad de lo aseverado. En su argumentación, el apelante sostiene que el Sr. José Rivera López no fue contrainterrogado al momento de ofrecer ciertas declaraciones al Agte. Jesús Torres Ramírez. Concluye, que esas declaraciones no debieron ser admitidas por el Tribunal en el juicio en su fondo, por constituir prueba de referencia y por violar su derecho a confrontación. No le asiste la razón.

Surge de la TPO, que el Sr. José Rivera López testificó bajo juramento en el juicio en su fondo y fue contrainterrogado por la defensa[5]. En ese sentido, no cabe hablar de prueba de referencia, pues el Tribunal recibió el testimonio directamente del propio Sr. José Rivera López en el juicio. No se violó el derecho a confrontación del apelante, pues el testigo declaró en corte y estuvo sujeto a contra interrogación sobre la declaración en cuestión. Véase *Crawford v. Washington,* supra y *Pueblo v. Guerrido López,* supra. El cuarto señalamiento de error no fue cometido.

En relación con el quinto señalamiento de error, el apelante señala que el Tribunal erró al no permitirle contrainterrogar al testigo Yadier Díaz Rosa sobre su estatus de sumariado. No obstante, surge de la TPO[6] que la determinación final del Tribunal en cuanto a las preguntas que permitiría hacer a la defensa en relación con el testigo Yadier Díaz Rosa, debían cumplir con el requisito de pertinencia establecido en la citada Reglas 401 y 402 de Evidencia, supra. El quinto señalamiento de error no fue cometido.

---

[5] Véase TPO del 21 de septiembre de 2021, págs. 80-115
[6] Véase TPO del 24 de septiembre de 2021, pág. 32

Por último, en su sexto señalamiento de error, señala el apelante que erró el Tribunal al omitir la instrucción al jurado sobre el testimonio de coautor y cooperador que exige la Regla 156 de Procedimiento Criminal, supra. Sobre el particular, debemos aclarar que, la Regla 156 de Procedimiento Criminal, supra, debe leerse en conjunto con la Regla 137 también de Procedimiento Criminal. Ello es así debido a que, si bien es cierto que la Regla 156 de Procedimiento Criminal establece una instrucción al jurado sobre el testimonio de coautores, la Regla 137 establece las consecuencias de no efectuar una oportuna solicitud a esos efectos. Nos dice la referida Regla que "[n]inguna de las partes podrá señalar como error cualquier porción de las instrucciones **u omisión en las mismas** a menos que planteare su objeción a ellas…" (Énfasis suplido)

En el presente caso, surge de la TPO[7] que cuando el Tribunal terminó de impartir las instrucciones al jurado, la defensa no solicitó la instrucción de coautor omitida. Por el contrario, manifestó no tener ninguna duda o reparo en las instrucciones impartidas. En consecuencia, de conformidad con la Regla 137 de Procedimiento Criminal, supra, concluimos que el sexto señalamiento de error no fue cometido.

## IV.

Por los fundamentos que anteceden, los cuales se hacen formar parte del presente dictamen, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[7] Véase TPO del 1 de octubre de 2021, pág. 108.